UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NEAL PAPIN,

        Plaintiff,                                Case No. 17-13999

v                                                      Honorable Thomas L. Ludington

COUNTY OF BAY,

        Defendant.
_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**

On December 12, 2017, Plaintiff Neal Papin filed a complaint against Defendant County of Bay ("County"). ECF No. 1. Plaintiff claims that Defendant retaliated against him for exercising his free speech rights, discriminated against him due to his political affiliation, and violated the Michigan Whistleblowers' Protection Act. *Id.* On September 7, 2018, Defendant filed a motion for summary judgment. ECF No. 9. The motion was granted on December 11, 2018. ECF No. 13. Plaintiff subsequently filed a motion for reconsideration. ECF No. 15. For the following reasons, the motion will be denied.

**I.**

Papin's claim arises from the 2012 and 2016 Bay County Sheriff elections and the candidate Robert Lee. In 2012, Lee retired from the Bay County Sheriff's Department after a 25-year career. ECF No. 1 at 2; *Lee v. Miller*, 4:15-cv-14255, ECF No. 47 at 11. That same year, he ran against John Miller for County sheriff and lost. ECF No. 1 at 2–3. In 2016, Lee again ran for sheriff and Papin served as his campaign manager. ECF No. 9-5 at 209. However, Lee lost the election to Troy Cunningham. ECF No. 1 at 7.

In 1996, Papin had started working for the County full-time as a cleaning custodian at the Law Enforcement Center. ECF No. 9-5 at 57–58. In August 2013 while cleaning, Papin saw Art

Kleinert, a Bay County Sheriff's Department deputy assigned to the Bay Area Narcotics Enforcement Team ("BAYANET").[1] *Id.* at 112–113. Papin alleges that Kleinert brought "a bag of trash into the building and dump[ed] the contents out in a room next to the squad room." ECF No. 1 at 4. Papin asked him what he was doing and Kleinert responded, "I gotta do a trash pull." *Id.* at 111. Kleinert did not say whose trash he was searching, but Papin had previously observed other BAYANET officers searching trash at the Law Enforcement Center. *Id.* at 114, 118–119.

Papin later related this experience to Lee and Lee responded that he had been missing trash. *Id.* at 113. Lee thought that Kleinert may have been searching his trash and asked Papin to inform him if Papin saw it happen again. *Id.* at 113–114. About a month later, Papin saw Kleinert searching through trash again. *Id.* at 119. He called Lee and again informed him of what he had seen. *Id.*

In July 2017, Lee was pursuing a lawsuit against the County Sheriff and others for conspiring against him during the 2016 sheriff election. *Id.* at 177; ECF No. 9-7 at 5. At the request of Lee's attorney, Papin gave Lee a statement describing what he had seen Kleinert doing. It stated in relevant part:

> I told Bob…of how I saw some weird stuff go on too, with the city/county, or other incidents in the jail, and then I came across a story of how I saw deputy Art Klenhart bring a bag of trash into the building and dump it in the room next to the squad room on the county end. Bob joked and said oh that's just a trash pull. That happens a lot. Bob had asked why Art, and I told him that Art was working Baynet now and that he was undercover…Bob kind of looked at me with a confused look and asked me if I could remember the day or date and I couldn't. My reply back was why?
>
> Bob mentioned to me that people had been going through his trash recently and he wondered if he was being targeted for something. I looked at him and he was serious. I thought the same thing since of where he use [sic] to work or maybe of the recent election outcome…He asked me if I wouldn't mind calling him the next time I saw this happen. I said sure no problem. I also told Bob of the conversation

---

[1] The spelling of this deputy's last name is unclear because Papin has used three different spellings. His complaint uses "Kleinert," his statement to Mr. Lee uses "Klenhart," and his response brief uses "Kleinart." ECF Nos. 1, 9-6, 12.

> with Jeff Sargenson on the home that Miller had bought in Florida, and of how the sheriff was retiring. I told him the sheriff was still off work and that Mike Janaskee had retired. He told me of knowing of Mike Janaskee's retirement but didn't know of the home in Florida story. He was curious and bitter knowing that Miller only ran to make sure someone else would take over other than someone who won the job in an election. He noted to me that Troy wouldn't automatically takeover since that move had to be made by the Prosecutor, the County Clerk, and the Probate Judge. He said they would have to the final say of who was to be the next sheriff.
>
> **About a month passed.**
>
> It was 12:45 when I got a page to contact the squad room and I again walked to the room rather than call the number. I walked to the room and again I saw deputy Art Kelnhart [sic] going through another trash bag. He had dumped it on the floor just off the squad room like before and he asked me for another trash bag…I asked him what he was looking for and he said just evidence…
>
> I wished him a good night and proceeded to put my stuff away since it was now 1 am. The voice rang in my head to call Bob since I had saw [sic] this happen again, so as I exited the building from work I called Bob on my cell phone. I apologized for the late call but Bob said it wasn't a problem, since he was up and awake watching a TV show. I told him that the trash thing had happened again and that it was in progress. Bob thanked me for the call and said he was heading out to check his trash can. He called me the next afternoon and said his trash was messed with again and that a bag was missing. He was angry and joked that he's putting some dog shit in his trash next week. He thanked me for the call and told me to not discuss this with anyone.

ECF No. 9-6 (bold language present in original). Lee sent Papin's statement to his attorney who included it in some manner in Lee's lawsuit against the County Sheriff. ECF No. 9-5 at 173.

On Friday, September 8, 2017, Shawna Walraven and Amber Davis-Johnson in the County's corporate counsel office saw Papin's statement on the website Public Access to Court Electronic Records ("PACER"). ECF No. 9-7 at 5. Upon seeing the statement, Walraven was concerned because the statement indicated that Papin had disclosed sensitive information about a potential criminal investigation to Lee, the possible target of the investigation. In Walraven's deposition, she spoke on this point.

> Q: Why were you concerned about Mr. Lee asking Mr. Papin to notify him if another trash bag was pulled?
>
> A: Because Mr. Lee thought he was the subject of the law enforcement investigation, and so, if Mr. Papin was disclosing things happening in an active

> investigation to the person he thought was the subject of the investigation I was concerned that could be criminal. If not criminal, I was concerned that he was actively trying to sabotage the County. And if he wasn't actively trying to sabotage the County, that he was unable to discern what was confidential and not.

ECF No. 9-7 at 7–8. She went on to state, "My concern was not really about the content of that investigation. It was more if Mr. Papin and Mr. Lee thought that it was during an active investigation it was their belief that concerned me more than the actual investigation." *Id.* at 11.

After reviewing the statement, Walraven and Davis-Johnson discussed the affidavit with Cristen Gignac, the County director of recreation and facilities. *Id.* at 7; ECF No. 9-4 at 6. Walraven recalls discussing the following with Gignac:

> Those exact concerns, that it could be criminal. If not criminal, you know, is Mr. Papin able to discern what is confidential and what is not confidential. And the biggest concern is that he was then working at the Health Department, and so, if he was unable to determine what was confidential he would have access to protected health information in the Health Department, which is a 50,000-dollar fine for each violation of HIPAA. So, were we going to be exposed to any potential liability there.

ECF No. 9-7 at 9. Gignac had similar concerns "about [Papin's] ability to decide what information was confidential and what wasn't, and I wanted to give us time to figure that out." ECF No. 9-4 at 24.

On Monday, September 11, 2017, Cristen Gignac requested to meet with Papin. ECF 9-5 at 177–178. Thirty minutes before the meeting, Papin met with his union representative, Lisa Neil, who accompanied him to the meeting. *Id.* at 179. At the meeting, Gignac asked Papin if he had provided a signed statement for Lee's lawsuit. *Id.* at 180. He confirmed that he had. *Id.* Gignac explained that based on the letter's contents, Papin had violated various County rules. *Id.* She immediately placed him on paid administrative leave until September 18, 2017 and explained that the County would inform him of their findings no later than September 15, 2017. *Id.* She told him that while on administrative leave, he was prohibited from entering County property and then she

asked for his keys and work badge. *Id.* She stressed that the paid administrative leave was not a disciplinary action. ECF No. 9-4 at 17.

Papin received a letter dated that same day informing him that the County was placing him on paid administrative leave until Monday, September 18, 2017. It stated in relevant part:

> On the afternoon of Friday September 8, 2017, information was brought to the attention of Bay County that may indicate a violation of several work rules. Additional time is necessary to evaluate this information and to determine what, if any, disciplinary action will be taken. Due to the severity of potential violations, effective Monday, September 11, 2017, you are being placed on paid administrative leave to allow sufficient time to evaluate the information. You are being placed on leave until Monday September 18th, 2017. The results of the evaluation and further instructions will be sent to you no later than Friday September 15, 2017.
>
> During the time you are on leave, you are not to enter County property unless expressly authorized to do so by myself, the Personnel Director or the County Executive. You are to turn in your keys and swipe card to all County properties during the duration of your leave.
>
> Should you have any questions or concerns, please feel free to contact me at 989-895-4132.

ECF No. 9-3.

The possibility of facing disciplinary action made Papin anxious. *Id.* at 189. He spoke with his union president, Wanda Behmlander, the president of the United Steel Workers Local. ECF No. 9-10 at 8. He was insistent on trying to determine whether he should resign. *Id.* at 24. Behmlander told Papin that they needed to meet with the County before making a decision about what he should do. ECF No. 9-10 at 8. She did not know which County rules Papin had violated and thus could not form an opinion about what type of discipline Papin would potentially receive. ECF No. 9-10 at 19. In his complaint, Papin alleges that Behmlander told him "that his job was at risk, it appeared Defendant was going to terminate his employment, and suggested Plaintiff resign in lieu of termination." ECF No. 1. At 9–10. During her deposition, Behmlander testified that this allegation by Papin was "absolutely false" and that she had never communicated that to Papin. ECF No. 9-10 at 21–22.

Papin believed that he would receive news of the investigation prior to September 15, 2017, even though the initial letter placing Papin on administrative leave informed him that he would receive the results "no later than Friday, September 15, 2017." ECF No. 9-3; ECF No. 9-5 at 194. On September 14, 2017, Papin did not receive a letter in the mail from the County informing him of its findings. That same day, he contacted Gignac and Tiffany Jerry, the County's Personnel Director, and asked to meet with them. ECF No. 9-5 at 195. During the meeting, Jerry explained that the findings from their investigation were not yet final. *Id.* Gignac and Jerry stressed that Papin did not have to resign. ECF No. 9-8 at 20. The County had not yet made a determination from their investigation. *Id.* Regardless, Papin said that he wanted to be done with it all and resigned from his job. *Id.*; ECF No. 9-5 at 197. His letter of resignation read:

> I Neal Papin respectfully have decided to resign my post with Bay County, this September 14th 2017. It's with great regret that I do this because my time with Bay County has been wonderful. I wish everyone there the best, and I thank you so much for the experiences shared. God Bless and best wishes.

ECF No. 9-2.

## II.

Plaintiff has filed a motion for the Court to reconsider its order granting Defendant's motion for summary judgment and dismissing Plaintiff's claim. Pursuant to Eastern District of Michigan Local Rule 7.1(h), a party can file a motion for reconsideration of a previous order, but must do so within fourteen days of the order's entry. A motion for reconsideration will be granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich.

1997)). "[T]he Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3). *See also Bowens v. Terris*, No. 2:15-CV-10203, 2015 WL 3441531, at *1 (E.D. Mich. May 28, 2015).

### III.

Plaintiff claims that the Court committed five palpable defects in its order granting Defendant's motion for summary judgment.

> First, the Court ignored Defendant's articulated interest under the *Pickering* balancing test and created for itself an interest obtained from Shawna Walraven's deposition transcript…Second, the Court ignored an entire argument raised by Plaintiff that he suffered an adverse employment action by virtue of being threatened with disciplinary action, including termination…Third, the Court drew factual conclusions as to Defendant's motivation on the issue of causation and ignored direct evidence of causation. Fourth, the Court exercised supplemental jurisdiction over Plaintiff's state law claims, when the Court has recognized in the past that dismissal without prejudice of state law claims after dismissal of federal law claims is the 'clear rule of this circuit.' Lastly, the Court applied the same analysis over Plaintiff's Michigan Whistleblowers' Protection Act claim, even though the Act specifically lists threats as an adverse employment action.

ECF No. 15 at 1–2. Each of Plaintiff's arguments will be addressed in turn.

### A.

When analyzing Plaintiff's claim within the framework of the *Pickering* test, the Court held as follows:

> Though Papin had been speaking as a citizen on a matter of public concern, the County had an adequate justification for treating him differently than they would a member of the general public. *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1958 (2006). Factors to consider in this determination include whether the employee's "comments meaningfully interfere with the performance of her duties, undermine a legitimate goal or mission of the employer, create disharmony among coworkers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees." *Williams v. Kentucky*, 24 F.3d 1526, 1536 (6th Cir. 1994). An employer is not required to "tolerate action which [it] reasonably believe[s] would disrupt the office, undermine [its] authority, and destroy close working relationships." *Connick v. Myers*, 103 S. Ct. 1684, 1694 (1983); *Gillis v.*

> *Miller*, 845 F.3d 677, 688 (6th Cir. 2017) (finding that an employer's interest in maintaining a confidential investigation outweighed plaintiff's protected speech).
>
> As explained by Walraven, the County was concerned that as a custodian, Papin had regular access to sensitive County information that he was a party to publicly disclosing without the approval of his employer. The County had a legitimate concern about Papin's trustworthiness. Since Papin's position gave him ready access to such information, the County had sufficient justification to treat Papin differently than a member of the general public. The County had a responsibility to safeguard the information in its possession, which included ensuring that its employees handled the information properly. Even though Papin had spoken on a matter of public concern, the County was justified in placing him on paid leave while it investigated his behavior.

ECF No. 13 at 10. Plaintiff claims that the Court fashioned this argument on Defendant's behalf. He contends that Defendants did not argue that the County had a prospective interest in preventing the dissemination of health information, but instead that Defendants alleged (but failed to prove) that Plaintiff's actions created dissension within the Sheriff's office. *See* ECF No. 15 at 5–6.

In its response, Defendant identifies at least five instances within its motion and briefings where it argued that it had an interest in preventing the dissemination of health information. They are as follows:

- The County had "legitimate questions about whether the County could continue to assign Plaintiff to clean the Health Department Building where he had access to protected health information when he had demonstrated he may be unable to determine what information should remain confidential." (Dkt 9, MSJ, p. 6).

- Asst. Corporation Counsel testified that they had to consider the fact that Plaintiff "was then working at the Health Department, and …would have access to protected health information," and may unwittingly violate HIPAA laws if he disclosed protected health information to others." (Dkt 9, MSJ, pp. 6-7).

- "Plaintiff was placed on paid administrative leave not because he participated in Lee's lawsuit, but because the County could not continue to allow him to have access to protected

- health information in the Health Department Building until an investigation could determine whether he was able to discern the type of information that must remain confidential." (Dkt 9, MSJ, p. 21).

- Plaintiff's "unsworn written statement disclosing his leak…is clearly outweighed by the County's substantially stronger interest in maintaining the orderly operation of law enforcement operations and protecting confidential law enforcement and health information." (emphasis added) (Dkt 12, County's Reply to MSJ, p. 6).

- "The County's decision to place Plaintiff on paid leave had nothing to do with Plaintiff's participation in Lee's lawsuit or with his political affiliation with Lee. The decision was made because the County could not allow Plaintiff to have access to protected health information while it conducted its investigation if Plaintiff could not maintain confidential information." (Dkt 12, County's Reply to MSJ, p. 6).

ECF No. 18 at 9–10 (emphasis omitted). Defendant also notes that it had attached Walraven's deposition as an exhibit to its motion and highlighted certain passages. *Id.* at 11. Defendant's multiple arguments on this issue and the highlighted deposition transcripts provided by Defendant more than rebut Plaintiff's contention that Defendants did not advance the argument.

**B.**

Plaintiff next argues that the Court ignored his claim of an adverse employment action by merging two of his arguments into one. In Plaintiff's response, he stated "Plaintiff claims two (2) adverse actions: (1) the September 11, 2017 placement on administrative leave and threat of further adverse action; and (2) the September 14, 2017 constructive discharge." ECF No. 11 at 17–18. Plaintiff argues that the Court merged the two arguments when the Court held that "Papin claims that the County placing him on paid administrative leave was an adverse employment action that

amounted to a constructive discharge." ECF No. 13 at 10–11.[2] Plaintiff contends that by ignoring his separate claim of adverse action on the basis of his placement on administrative leave and threat of further adverse action, "the Court could then limit the analysis solely to Plaintiff's decision to resign and cite to testimony that he was advised not to resign." ECF No. 15 at 14. Plaintiff reasons that his claim of constructive discharge would have been bolstered had the Court articulated the actions separately.

However, the Court did consider the facts of Plaintiff's "placement on administrative leave and threat of further adverse action." *Id.* at 12. It cited to the letter in which the County informed Papin that his conduct "may indicate a violation of several work rules" and that he was being placed on leave "[d]ue to the severity of potential violation." ECF No. 13 at 5. The Court also acknowledged that Papin was anxious due to the "possibility of facing disciplinary action" and quoted his deposition in which he expressed this anxiety. *Id.* The Court included all of these facts in the opinion because the Court considered them when it concluded that Papin's placement on paid administrative leave did not amount to an adverse employment action.

Furthermore, if the Court had articulated a separate analysis as Plaintiff suggests it should have done, the result would have been the same. Plaintiff contends that Defendant's actions present "a factual question whether a reasonable person would feel compelled to resign." ECF No. 15 at 14. He claims that "Plaintiff knew of the potential 'severe outcome' and reminded Plaintiff of the 'severity of the potential violations.'" Plaintiff uses the term "severe outcome" twice as if to assert that Defendant had explicitly told Plaintiff that his actions would result in a severe outcome. However, the term "severe outcome" appeared in an internal email, not in any of the

---

[2] It should be noted that the Court was analyzing the veracity of Plaintiff's adverse employment action only after the Court had already determined that Plaintiff had not fulfilled the first element of his prima facie First Amendment retaliation case. ECF No. 13 at 10 ("Even if Papin had fulfilled both components of the first requirement, he has not fulfilled the second requirement of an adverse employment action.").

communications between the County and Papin. Plaintiff himself explained this in his response brief to Defendant's motion for summary judgment. ECF No. 11 at 6 ("In a September 10, 2017 email, Ms. Jerry emphasizes that she wanted a letter to Plaintiff to indicate there could be a 'severe outcome.' (Ex. 7)."). However, the letter from the County to Plaintiff does not contain threatening language. It focuses on the fact that the County needed time to investigate Plaintiff's potential work violation.

> [I]nformation was brought to the attention of Bay County that *may indicate* a violation of several work rules. Additional time is necessary to evaluate this information and to determine what, *if any*, disciplinary action will be taken. Due to the severity of *potential* violations…you are being placed on paid administrative leave to allow sufficient time to evaluate the information.

ECF No. 9-3 (emphasis added). The letter uses the term "severity," but it is not in relation to the outcome of the investigation. Instead, it is in relation to the severity of the alleged violations the County was going to investigate.

Defendant placing Papin on paid administrative leave in order to investigate credible information that Papin potentially lacked the competence or trustworthiness to refrain from disclosing sensitive County information (such as health information) does not constitute an adverse employment action.

## C.

Plaintiff next argues that the Court committed palpable error in concluding that Plaintiff's claim lacked a causal connection.[3] Plaintiff focuses on one statement by the Court in which it stated, "The County has made clear through multiple statements and evidence that it did not place [Papin] on paid administrative leave because of the content of his statement used in Lee's case…"

---

[3] It should be noted that similar to the previously discussed finding, the Court made this finding in the alternative after already determining that Plaintiff had established neither the first nor the second elements of his prima facie case. ECF No. 13 at 11 ("Even if Papin had fulfilled the first or second prima facie requirements of his First Amendment retaliation claim, he has not established a causal connection between his alleged protected speech and the County's alleged adverse employment action.").

ECF No. 15 at 15 (quoting ECF No. 13 at 11.). Plaintiff then proceeds to quote deposition statements without context to support his assertion that he was terminated because of the content of his statement. ECF No. 15 at 15–18.

However, Plaintiff does not provide the entire context for the Court's finding. Where Plaintiff inserted ellipses, the Court had explained the situation. The order provides

> The County has made clear through multiple statements and evidence that it did not place him on paid administrative leave because of the content of his statement used in Lee's case, but rather, *because the statement revealed that he had disclosed potentially sensitive County information.* "[Q]uite apart from Pickering balancing, wrongdoing that an employee admits to…may be a valid basis for termination or other discipline." *Lane v. Franks*, 134 S. Ct. 2369 2381 n. 5 (2014). Placing Papin on temporary paid administrative leave was in response to Papin's own conduct, not in response to the content of his statement in Lee's lawsuit.

ECF No. 13 at 11–12 (emphasis added). As explained in the Court's order, the County placed Papin on leave in response to his conduct as expressed in the affidavit, not in response to the content of his statement in Lee's lawsuit. Plaintiff's mischaracterization of the Court's order is not evidence of palpable error.

**D.**

Next, Plaintiff contends that the Court erred in adjudicating his challenged state law claims on the merits, but rather should have declined to exercise supplemental jurisdiction over those claims and dismissed them without prejudice so that they could be brought in state court. Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right" whose justification "lies in considerations of judicial economy, convenience and fairness to litigants." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966).

Plaintiff underscores precedent which provides that "[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006)." Moreover, Plaintiff contends that "In fact,

this Honorable Court has frequently noted that dismissal without prejudice of state law claims is the 'clear rule of this circuit.' *See Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1998); *Perry v. Se. Boll Weevil Eradication Found.*, 154 F. App'x 467, 478 (6th Cir. 2005)." Plaintiff further argues as follows:

> Although Plaintiff acknowledges that the exercise of supplemental jurisdiction is ultimately discretionary, this Court did not explain why it retained jurisdiction. It did not evaluate various factors, such as judicial economy, convenience, fairness, or comity as the Sixth Circuit has instructed a trial court to weigh. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951-952 (6th Cir. 2010).

Thus, Plaintiff suggests that a court's discretionary decision to exercise supplemental jurisdiction could in some circumstances be considered a palpable error justifying relief on a motion for reconsideration. Plaintiff goes on to suggest that, even if the decision itself was not a palpable error or an abuse of discretion, a court's failure to analyze the above factors and *explain* its reasons for exercising supplemental jurisdiction is a palpable error. Even if either of these propositions is correct, Plaintiff overlooks a key point. That is, Plaintiff provides no authority for his unstated assumption that the Court must raise this issue *sua sponte*. In his response to Defendant's motion for summary judgment, Plaintiff did not ask (in the alternative, or otherwise), for the Court to decline to exercise supplemental jurisdiction over his state law claims in the event that his federal claims were resolved against him. Nor did Plaintiff provide any analysis as to how the above-quoted discretionary factors would apply in this case. Issues raised for the first time in a motion for reconsideration are waived. *See Martin v. A.O. Smith Corp.*, 931 F. Supp. 543, 550 (W.D. Mich. 1996).

**E.**

Plaintiff contends that the Court erred when it dismissed his claim under the Michigan Whistleblowers' Protection Act. The Court determined that "Papin cannot establish all the *prima facie* elements because as explained above, the County did not discharge Papin or discriminate

against him." ECF No. 13. Plaintiff argues that the Court erred because it "ignored Plaintiff's claim that Defendant took adverse employment action by threatening his employment." ECF No. 15 at 21. However, as explained above, the Court did consider whether Defendant placing Papin on paid administrative leave and its interactions with Plaintiff constituted an adverse action. The Court concluded that it did not and accordingly, dismissed the claim.

**IV.**

Plaintiff has not established that the Court made an error that was "obvious, clear, unmistakable, manifest, or plain" and one whose remedy would change the outcome of the case. *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)).

**VI.**

Accordingly, it is hereby **ORDERED** that Plaintiff's motion for reconsideration, ECF No. 15, is **DENIED**.

Dated: April 25, 2019    s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge